# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Purple Motorola cellular phone (Exhibit N-13) | )<br>)<br>) Case No. 2:22-mj-486<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, which is fully incorporated herein

located in the _____ Southern _____ District of _____ Ohio _____, there is now concealed *(identify the person or describe the property to be seized)*:
Property that constitutes evidence of the commission of and/or property designed or intended for use or which is or has been used as a means to commit criminal offenses as described in Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC 841(a)(1) | Distribution of a Controlled Substance |

The application is based on these facts:

See Attached Affidavit

☒ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Task Force Officer Bryan Mason
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/5/2022

City and state: Columbus, Ohio

Kimberly A. Jolson
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF **purple Motorola cellular phone**, CURRENTLY LOCATED AT **500 S Front St, Columbus Ohio, 43215 stored as Exhibit N-13** | Case No. 2:22-mj-486 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, TFO Bryan Mason, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Task Force Officer with the Drug Enforcement Administration, and have been since May 9, 2019. The Affiant is currently a Columbus Police Officer assigned as a Detective to the Columbus Division of Police, Drug Enforcement Bureau and is concurrently serving with the Drug Enforcement Administration as a Task Force Officer. The Affiant has been a Police Officer in good standing since December 18, 2006 and assigned to the Drug Enforcement Administration since May 9, 2019. As a result of his training and experience as a Police Officer, Detective and Task Force Officer the Affiant is familiar with Ohio Revised Code criminal laws relating to narcotics violations and Title 21 of The United States Federal Criminal Code.

3. In addition to the Columbus Division of Police standard training the Affiant has specialized training as a detective with the Columbus Division of Police. The Affiant has attending additional training relating to Motorcycle Street Gangs, Response to Terrorist incidents, Basic Supervisor Leadership, cell phone mapping analysis (CASTVIZ) and Task Force Officer basic training.

4. The affiant has primarily focused on narcotics cases since November, 2016 and has investigated multiple drug trafficking organizations (DTO) operating in Central Ohio. The Affiant is familiar with organizations using fictitious information to obtain vehicles, apartments, storage units and communication devices in an attempt to elude law enforcement.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. The property to be searched is a purple Motorola cellular phone, serial number unknown, stored as Exhibit N-13, described hereinafter as the "Device." The Device is currently located at 500 S. Front Street, Columbus, Ohio 43215.

7. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8. On June 30, 2022, Columbus Division of Police Officer Scarpitti initiated a traffic stop on a vehicle driven by Christopher PETERSON for multiple traffic violations. Officers

approached the vehicle and engaged in conversation with the owner and sole occupant of the vehicle, PETERSON, and advised him for the reason of the traffic stop. Officers obtained consent from PETERSON to search the vehicle and PETERSON for contraband.

9. Columbus Division of Police Officers Smith and Scarpitti began searching the vehicle and PETERSON and Officer Smith immediately recognized an object concealed inside PETERSON's underwear which was not consistent with the human anatomy. Officer Smith immediately handcuffed PETERSON and PETERSON acknowledged that he had concealed something from the Officers. PETERSON agreed to remove the object and did so without resistance.

10. PETERSON retrieved a tan colored grocery bag that concealed chunks of pressed white powder. Officers described the powder as a corner piece that appeared to be removed from a kilo of cocaine. Officers used a digital scale to weigh the suspected cocaine and determined the powder weighed approximately 117 grams.

11. Officers recovered two cell phones from PETERSON and an additional cellular phone from the passenger seat of the vehicle. PETERSON was in possession of two Apple I-phones, one of which he was utilizing during the traffic stop (Exhibit N-12) and the other in his pocket (Exhibit N-11). Officers recovered a purple Motorola cellular phone from the vehicle (Exhibit N-13).

12. Officer Scarpitti read PETERSON his constitutional rights which PETERSON acknowledged he understood and agreed to answer questions. PETERSON was vague on his description of the person he obtained the narcotics from but stated he has purchased

approximately 100 grams of narcotics on four separate occasions from the same supplier. PETERSON stated he has to contact the supplier by telephone to arrange a meeting location to acquire the narcotics. PETERSON did not elaborate on how much he paid and stated he obtained the narcotics he was found with on the previous day.

13. Investigators know that narcotics traffickers will utilize multiple cellular telephones in their drug trafficking operations. All three of the cellular phones found in PETERSON's possession are smart phones which are capable of using different messaging applications which are protected by encryption. A search of the cellular devices will allow investigators to determine what type of communication is being utilized by this drug trafficking organization (DTO). Investigators also believe the data within the devices will allow investigators to identify other individuals involved along with locations where drugs are stored, sold and processed for distribution.

## **TECHNICAL TERMS**

14. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and

4

from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media.

5

Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs

usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

15. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at www.apple.com, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

16. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

17. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

8

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

18. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

19. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

9

## CONCLUSION

20. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

21. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

Bryan Mason
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me
on July 5, 2022:

10

_____
Kimberly A. Jolson
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is a purple Motorola cellular phone, serial number unknown, stored as Exhibit N-13, described hereinafter as the "Device." The Device is currently located at This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1) and involve **PETERSON** since **the date the device was activated**, including:

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. any information recording **PETERSON**'s schedule or travel from **the date the device was activated** to the present;

    e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.